UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Plaintiff,   ) | |
| ) | |
| v.   ) | Case No. CR-23-348-G |
| ) | |
| CHAD BACK,   ) | |
| a/k/a Overflow,   ) | |
| ) | |
| Defendant.   ) | |

**ORDER**

Now before the Court is a Motion to Dismiss for Pre-Indictment Delay (Doc. No. 31), filed through counsel by Defendant Chad Back. The Government has submitted a Response in Opposition (Doc. No. 43). The Court heard additional argument from the parties at the Pretrial Conference and hearing held on August 6, 2024. *See* Doc. No. 53. Having considered the parties' arguments and the relevant evidence, the Court makes its determination.

*I. Background*

The Government alleges that Defendant, while in Oklahoma Department of Corrections ("ODOC") custody serving a state prison sentence, engaged in a year-long conspiracy to distribute drugs using contraband cellphones. *See* Indictment (Doc. No. 1); Gov't's Resp. (Doc. No. 43) at 2; Def.'s Mot. (Doc. No. 31) at 1. Defendant first came to the attention of law enforcement in the summer of 2019. *See* Gov't's Resp. at 2. Beginning in July of 2019, law enforcement used a confidential source to conduct a series of controlled buys from Defendant. *Id.* Ahead of the controlled buys, the confidential source would call

Defendant on his contraband cellphone and order various quantities of methamphetamine. *Id*. Defendant would then, from prison, direct the confidential source to different locations where the source would receive methamphetamine from Defendant's associates, who operated outside of prison on Defendant's behalf. *Id.*[1] In the fall of 2019, law enforcement "deactivated" the confidential source in light of continued criminal activity by the confidential source. *See* Gov't's Resp. at 2-3; *see also* Def.'s Mot. at 2.

In July of 2020, law enforcement executed two search warrants at two separate residences: one residence belonging to Victor Borgess, an alleged associate of Defendant's, and the other belonging to the confidential source. Gov't's Resp. at 3. Law enforcement found methamphetamine and heroin at Mr. Borgess' residence. *Id*. At the confidential source's residence, law enforcement found additional drugs and drug ledgers, which, according to the Government, indicate that Defendant and the confidential source were working together to sell drugs. *See id.*[2]

Following the July 2020 search, the confidential source was arrested and charged in state court. Def.'s Mot. at 2. In October of 2020, the confidential source was sentenced to 15 years to do in ODOC custody. *Id*. In February of 2023, the State of Oklahoma dismissed multiple new criminal charges that had been filed against the confidential source. *See id.*

---

[1] Many of the calls and texts leading up to controlled buys were recorded, and the Government represents that each controlled buy was audio and/or visually recorded. *See* Gov't's Resp. at 2; Def.'s Mot. at 1-2.

[2] The seizure of the drugs at Mr. Borgess' residence is the basis for Counts 7 and 8 of the Indictment. *See* Gov't's Resp. at 3; Def.'s Mot. at 2; Indictment at 4-5. Defendant was not charged for the drugs found at the confidential source's residence. *See* Gov't's Resp. at 3.

at 7; Gov't's Resp. at 13.  Shortly thereafter, the confidential source's 15-year sentence was modified to a suspended sentence, and the source was released from custody.  *See* Def.'s Mot. at 7; Gov't's Resp. at 13.

During the July 2020 search of Mr. Borgess' residence, law enforcement found a key to a storage unit and obtained a search warrant for the storage unit associated with the key.  Gov't's Resp. at 12.  The Government represents that inside the storage unit, law enforcement discovered a safe containing drug residue and several fake IDs bearing Defendant's name.  *See id*.  The photographs taken in connection with this search have since been lost.  *See id.*; Def.'s Mot. at 6.[3]

On or about September 18, 2020, pursuant to a warrant for a wiretap obtained in a separate investigation, the Government recorded a phone call between a ODOC inmate, Gilbert Postelle, and a person who is alleged to be Defendant.  *See* Def.'s Mot. at 5-6; Gov't's Resp. at 11.  On this call, Defendant allegedly admitted his involvement in the drug conspiracy, specifically stating that the drugs recovered at Mr. Borgess' residence following the execution of the July 2020 search warrant belonged to him.  *See* Gov't's Resp. at 11; *see also* Def.'s Mot. at 6.  The State of Oklahoma executed Mr. Postelle on February 17, 2022.  Def.'s Mot. at 6.

---

[3] The Government has submitted a Supplemental Notice (Doc. No. 60), stating that while photographs associated with the search of the storage unit have been lost, the Government is still in possession of the fake IDs recovered during the search and photographs of these fake IDs were provided to Defendant in discovery.  *See* Gov't's Suppl. (Doc. No. 60) at 1-2; *see also id.* Ex. 1 (Doc. No. 60-1).

In or around May of 2022, Defendant began applying for clemency regarding concurrent state prison sentences that he had received in April of 2018 totaling 45 years, with 25 years in ODOC custody and 20 years suspended. *Id.* at 2; *see id.* Ex. 1 (Doc. No. 31-1). In April of 2023, Defendant was granted clemency, and his sentences were commuted to a total of 38 years, with 18 years in ODOC custody and 20 years suspended. Def.'s Mot. at 3; *see* Def.'s Mot. Ex. 1. This sentence reduction made Defendant immediately eligible for parole, and so Defendant applied. Def.'s Mot. at 3. Defendant represents that he was granted parole on August 4, 2023, and was told that he was scheduled to be released from ODOC custody within the next 30 days. *See id.*

On August 16, 2023, a federal grand jury returned the eight-count Indictment against Defendant. The Indictment charges Defendant with one count of drug conspiracy in violation of 21 U.S.C. § 846 (July 24, 2019-July 16, 2020), four counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (on dates from July 2019 through September 2019), two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (on dates in September 2019 and July 2020), and one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (July 16, 2020). *See* Indictment at 1-5. Defendant was taken into federal custody on or about August 21, 2023, *see* Doc. No. 5, was arraigned on the Indictment on August 25, 2023, *see* Doc. No. 9, and filed the instant Motion to Dismiss on July 25, 2024.

II. *Applicable Law*

A defendant may challenge "a defect in instituting the prosecution," including for "preindictment delay," at any time prior to trial. Fed. R. Crim. P. 12(b)(3)(A)(ii). Here,

Defendant has timely moved that the charges against him be dismissed because the Government improperly delayed instituting the prosecution of Defendant.

"[S]tatutes of limitations . . . provide the primary guarantee, against bringing overly stale criminal charges." *United States v. Lovasco*, 431 U.S. 783, 789 (1977) (internal quotation marks omitted). But "the statute of limitations does not fully define [the defendant's] rights with respect to the events occurring prior to indictment," and the Due Process Clause of the Fifth Amendment to the United States Constitution "has a limited role to play in protecting against oppressive delay." *Id.* (internal quotation marks omitted). Courts have specifically recognized that "pre-indictment delay solely to gain tactical advantage over the accused . . . deviates from elementary standards of fair play and decency required by the Due Process Clause." *United States v. Murphy*, 100 F.4th 1184, 1208 (10th Cir. 2024) (alteration and internal quotation marks omitted).

The Tenth Circuit has articulated a balancing test "to apply when 'determining whether dismissal is appropriate for pre-indictment delay.'" *Id.* at 1210 (quoting *United States v. Comosona*, 614 F.2d 695, 696 (10th Cir. 1980)). The appellate court described the test as follows:

> (1) "there must be demonstration of actual prejudice to the defendant resulting from the delay. Generally, such prejudice will take the form of either a loss of witnesses and/or physical evidence or the impairment of their effective use at trial"; (2) "the length of delay must be considered"; and (3) "the Government's reasons for the delay must be carefully considered."

*Id.* (quoting *Comosona*, 614 F.2d at 696). These factors are considered within the context of a burden-shifting framework. *See id.* Under this framework, "the defendant must first make a prima facie showing that the delay in charging him has actually prejudiced his

5

ability to defend" and "that this delay was intentionally or purposely designed and pursued by the Government to gain some tactical advantage over or to harass him." *Id.* (internal quotation marks omitted). "Upon that showing, the government must then demonstrate that 'the delay was not improperly motivated or unjustified,' at which point the defendant 'bears the ultimate burden of establishing the Government's due process violation by a preponderance of evidence.'" *Id.* (quoting *Comosona*, 614 F.2d at 697).

### III. Discussion

There is no dispute that the charges presented in the August 16, 2023 Indictment were timely brought within the applicable statute of limitations. *See* 18 U.S.C. § 3282(a) (prescribing that no person shall be prosecuted for a noncapital offense "unless the indictment is found . . . within five years next after such offense shall have been committed"). Defendant nevertheless argues that he has suffered actual prejudice due to the Government's intentional pre-indictment delay and that dismissal of the Indictment is the only adequate remedy. *See* Def.'s Mot. at 1-9. In its Response, the Government argues that Defendant's request should be denied because Defendant cannot make the required showings regarding actual prejudice and intentional delay. *See* Gov't's Resp. at 8-15.

#### A. Actual Prejudice

As explained above, Defendant must make a prima facie showing that the delay in initiating this prosecution has actually prejudiced his ability to defend. *See Murphy*, 100 F.4th at 1210. In this regard, "the defendant's claims of prejudice must be definite, not speculative or vague and conclusory." *Id.* at 1209 (alteration and internal quotation marks omitted). "Vague and conclusory allegations of prejudice resulting from the passage of

time and absence of witnesses are insufficient to constitute a showing of actual prejudice." *United States v. Abdush-Shakur*, 465 F.3d 458, 466 (10th Cir. 2006) (internal quotation marks omitted).

Defendant argues that the pre-indictment delay here has caused him actual prejudice "because exculpatory evidence available at the time of the investigation has been lost, and [Defendant] has lost the ability to gather evidence that is critical to his defense." Def.'s Mot. at 4. Specifically, Defendant argues his defense has been undermined because in the years between the investigation and the filing of the Indictment:

- (1) relevant prison security camera recordings were destroyed;
- (2) a witness to an alleged recorded confession, Mr. Postelle, was executed by the State;
- (3) photographs and items seized during the search of the storage unit were lost; and
- (4) the confidential source received beneficial treatment from prosecutors.

*See id.* at 4-5.

The Government responds that the loss of this potential evidence does not rise to the level of actual prejudice and that Defendant's claimed prejudice is "speculative at best." Gov't's Resp. at 8. Further, during oral argument on the Motion, the Government asserted that, in various ways, the loss of evidence in this case favors Defendant.

1. Prison Security Camera Recordings

Regarding the loss of ODOC security camera recordings, Defendant argues that, if not for the Government's delay in initiating this prosecution, Defendant would be able to use those recordings to prove that telephone calls relied upon by the Government were not made by Defendant because Defendant, at the time such calls were made, was not inside

7

his prison cell using a contraband cellphone. At the hearing, the Government presented evidence that: (1) there were no security cameras monitoring the inside of Defendant's (or any other inmate's) cell during the relevant period, and (2) recordings from the security cameras that did exist at the ODOC facility may only be retrieved up to, at most, 30 days after the date of recording, after which the recordings are routinely destroyed.[4] In light of these facts, it is apparent that the pre-indictment delay complained of by Defendant is not the cause of Defendant's inability to obtain the cited ODOC security camera recordings. Those recordings would have been destroyed prior to any earlier date that charges against Defendant might reasonably have been brought.

2. Unavailability of Gilbert Postelle to Testify

Defendant argues that Mr. Postelle's death by execution precludes defense counsel from obtaining information or testimony that might generally exonerate Defendant or discredit the Government's evidence of a recording of a telephone call allegedly between Mr. Postelle and Defendant. The death of a potential witness is not enough to support a claim of actual prejudice unless the defendant can specifically establish that the deceased witness's testimony would have benefited his case. *See United States v. Koch*, 444 F. App'x 293, 298 (10th Cir. 2011) (finding that the defendant had not shown actual prejudice due to pre-indictment delay when he "offered no non-speculative reason to conclude that [the deceased] witnesses would have been any[]more helpful to him than those that

---

[4] At the Pretrial Conference, the Government introduced an email from the general counsel for ODOC stating that there are no security cameras monitoring the inside of prison cells and that prison security camera recordings may only be retrieved 14 to 30 days after an incident. *See* Gov't's Ex. 3.

survived and provided testimony distinctly adverse to him"); *United States v. Trammell*, 133 F.3d 1343, 1351 (10th Cir. 1998) (finding that the defendant had not shown actual prejudice where he did not "specifically allege how the [the deceased] witnesses' testimony would have been of benefit to his case"). Here, counsel for Defendant acknowledges that he can only guess what Mr. Postelle's testimony might have been and whether Mr. Postelle would have provided any information that would exonerate Defendant. The possibility that Mr. Postelle might have denied Defendant's participation in the referenced telephone call is not sufficient to establish actual prejudice.[5]

      3. <u>Lost Photographs</u>

Regarding the lost photographs from the search of the storage unit, the Government represents that it will not introduce any evidence or testimony related to the search of the storage unit and the materials recovered during that search. *See* Gov't's Resp. at 12. With one exception, Defendant does not explain how the loss of any photographs taken during the search of the storage unit, or any materials obtained during the search, would prejudice him other than by stating that this lost material is "no longer available for the defense to review and potentially use." Def.'s Mot. at 6. This broad assertion is not enough, by itself, to show actual prejudice with regard to any lost photographs or evidence from the search of the storage unit. *See United States v. Garcia*, 74 F.4th 1073, 1103 (10th Cir. 2023) ("[T]he loss of evidence, without more, is insufficient to support a claim of unconstitutional pre-indictment delay.").

---

[5] The question of whether the recording of the telephone call may be admitted into evidence at trial, in whole or in part, is not before the Court at this time.

As to the exception: during oral argument, Defendant asserted that the fake IDs possibly could have shown that other individuals were assuming Defendant's identity in relation to the alleged conspiracy. The Government has explained, however, that the fake IDs recovered during the search of the storage unit still exist and have been provided to Defendant. *See* Gov't's Suppl. at 1-2; *see also id.* Ex. 1 (photographs of fake IDs bearing Defendant's name and image). Accordingly, Defendant cannot show that he has suffered actual prejudice due to the loss of the fake IDs.

4. Beneficial Treatment for Confidential Source

Defendant argues that the pre-indictment delay has harmed his case because the confidential source referenced above has received beneficial treatment in connection with sentences that the source was ordered to serve for state-court crimes and, as a result, will be motivated to testify against Defendant. Defendant implies that the beneficial treatment received by the confidential source may have been due to cooperation with the Government regarding Defendant's federal prosecution and, further, that this treatment will result in the confidential source not testifying truthfully. *See* Def.'s Mot. at 8. Defendant does not adequately explain why the pre-indictment delay in this case precludes him from challenging any false or misleading testimony by the confidential source, however, other than to state that if not for this delay defense counsel would have been able to attend the relevant state-court hearings to determine the true reasons for the confidential source's beneficial treatment. *See id.*

The Court finds that neither defense counsel's suggestion that the confidential source's testimony will be affected by the disposition of the confidential source's state-

court sentences, nor the suggestion that the pre-indictment delay itself has undermined Defendant's ability to impeach any false or misleading testimony by the confidential source, is substantiated. The Government has represented to Defendant and the Court that it was not responsible for any deal that the confidential source received regarding the source's state cases. *See* Gov't's Resp. at 13-14. Defendant remains able to cross-examine the confidential source and other witnesses. And any minor detriment to Defendant's case due to his counsel's inability to attend the confidential source's state-court hearings certainly does not rise to the level of actual prejudice. *See Koch*, 444 F. App'x at 298 ("[T]he defendant bears the burden of proving that the government's delay *actually* prejudiced him; speculative surmise about what the evidence *might* have shown but for the government's delay is not enough.").

### B. *Reasons for Delay*

Even assuming that Defendant could show actual prejudice due to pre-indictment delay, Defendant must also make a prima facie showing that the "'[pre-indictment] delay was intentionally or purposely designed and pursued by the Government to gain some tactical advantage over or to harass him.'" *Murphy*, 100 F.4th at 1210 (quoting *Comosona*, 614 F.2d at 697). As the Tenth Circuit has explained, "proof of prejudice is generally a necessary but not sufficient element of a due process claim, and the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *Id*. at 1208 (omission and internal quotation marks omitted).

Defendant argues that "the Government intends to use this delay to its advantage and present evidence it knows is not available to Defendant, has never been turned over to

Defendant, and cannot be discredited by Defendant because of its mysterious disappearance." Def.'s Mot. at 8. But Defendant offers no more than conclusory assertions to support that the Government's delay was intentional or purposeful. Further, no evidence or argument introduced at the Pretrial Conference or through the briefing supports a finding that the Government delayed the initiation of this prosecution in order to gain a tactical advantage over Defendant. As the Government argues, it "is certainly no better off today than it would have been had it charged the case earlier." Gov't's Resp. at 15; *see also United States v. Wilson*, No. CR-08-263, 2010 WL 11505685, at *21 (D. Colo. Oct. 14, 2010) ("Because it bears the burden of proof, pre-indictment delay usually does not benefit the prosecution.").

Defendant also suggests that the timing of the Indictment, returned mere weeks before Defendant was scheduled to be released from prison after having been granted parole, was designed to harass him. Defendant does not explain how the Government's pursuit of the present charges against Defendant constitutes harassment or why the Government or its counsel are motivated by any consideration other than the interests of justice. For its part, the Government denies that it had any improper motive in waiting until Defendant was set to be released from ODOC custody to pursue the Indictment and denies that the timing of the Indictment was intended to harass.

On this record, the Court finds that Defendant has failed to make a prima facie showing that the Government's delay in initiating this prosecution was intentionally or

purposely designed and pursued by the Government to gain some tactical advantage or to harass Defendant.[6]

Citing a footnote in the Supreme Court's *Lovasco* decision, Defendant argued at the Pretrial Conference that he can alternatively satisfy this second prong by showing that the "prosecutorial delay was incurred in reckless disregard of circumstances, known to the prosecution, suggesting that there existed an appreciable risk that delay would impair the ability to mount an effective defense." *Lovasco*, 431 U.S. at 796 n.17 (internal quotation marks omitted). Even upon accepting this standard applies,[7] Defendant has not made the required showing. As discussed previously, Defendant only offers non-particularized speculation regarding the potential exculpatory value of much of the evidence lost between the end of the investigation and the return of the Indictment. Specifically as to the routine destruction of the prison security camera recordings, the exhibits offered by the parties suggest that, like Defendant's counsel, counsel for the Government did not know until

---

[6] Further, even though the Government is under no obligation to do so at this initial stage of the burden shifting framework, it has described events that impacted how and when the Government elected to prosecute Defendant. *See* Gov't's Resp. at 3-4. Specifically, the Government explains that the arrests of Defendant's associates made investigation and prosecution of Defendant more difficult and that other ongoing, large-scale drug conspiracy investigations limited law enforcement resources. *See id.* The Court finds this explanation credible.

[7] This "reckless disregard" expansion of the standard was "approved" in *Lovasco* and is "supported" by the more recent Supreme Court decision of *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8850) in U.S. Currency*, 461 U.S. 555, 563 (1983). *Garcia*, 74 F.4th at 1097. Although these decisions "call[] . . . into question" the Tenth Circuit's current two-prong test, the Tenth Circuit "has declined to explicitly adopt" the reckless disregard language. *Id.* ("[W]e leave for another day the question of whether this circuit's test should be expanded."); *United States v. Lowe*, No. 23-2114, 2024 WL 1461253, at *2 n.2 (10th Cir. Apr. 4, 2024).

13

relatively recently that ODOC had not preserved any relevant recordings. *See* Gov't's Ex. 3; Def.'s Mot. Ex. 2 (Doc. No. 31-2). Accordingly, Defendant has provided no reason why the Government should have been aware of probable prejudicial impact to Defendant's case due to the loss of the identified potential evidence. The Court therefore concludes that Defendant has not shown that the Government delayed seeking an indictment "in reckless disregard of its probable prejudicial impact upon the defendant's ability to defend against the charges." *$8850 in U.S. Currency*, 461 U.S. at 563.

### C. Summary

It is not the Court's "function to second-guess the government's timeline in bringing an indictment absent a showing that *both* factors—actual prejudice and the government's deliberate, tactical delay—are present." *Murphy*, 100 F.4th at 1209 (internal quotation marks omitted). "In other words, a defendant must satisfy *both* parts of the two-pronged test in order to obtain any relief for pre-indictment delay, including dismissal of the indictment on the ground of excessive delay." *Id.* Defendant has not, for the reasons explained above, made the requisite prima facie showing as to either the first or the second prong of this test.

## CONCLUSION

Accordingly, Defendant Chad Back's Motion to Dismiss for Pre-Indictment Delay (Doc. No. 31) is DENIED.

IT IS SO ORDERED this 29th day of August, 2024.

CHARLES B. GOODWIN
United States District Judge