## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-23-348-G |
| | ) | |
| CHAD BACK, | ) | |
| a/k/a Overflow, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>ORDER</u>

On July 25, 2024, Defendant, through his then-counsel W. Brett Behenna,[1] filed a Motion (Doc. No. 32) requesting that the Court hold a hearing pursuant to *United States v. James*, 590 F.2d 575 (5th Cir. 1979), to determine the admissibility of any coconspirator statements that the Government seeks to introduce at trial. *See also United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995). The Government submitted a Response on August 1, 2024, representing that it intends to introduce only a few coconspirator statements at trial pursuant to the hearsay exception of Federal Rule of Evidence 801(d)(2)(E). *See* Gov't's Resp. (Doc. No. 38) at 1-6. Specifically, the Government indicated that it intends to introduce certain statements by Defendant's alleged coconspirator, Gonzalo Duran, recorded during a controlled buy with a confidential source. *See id*. at 3-4.

---

[1] Mr. Behenna withdrew as Defendant's counsel of record on September 13, 2024. *See* Doc. No. 70. Michael Noland was appointed to represent Defendant on September 20, 2024. *See* Doc. No. 72.

The Court granted Defendant's Motion for *James* Hearing on August 2, 2024, *see* Doc. No. 41, and held a *James* hearing in this matter on August 6, 2024, *see* Doc. No. 53. The Government then, with the Court's leave, submitted a supplemental brief on certain issues raised at the *James* hearing. *See* Gov't's Suppl. (Doc. No. 56). Having considered the parties' arguments and the evidence presented, the Court makes its determination regarding the admissibility of the identified coconspirator statements.

I.      *Relevant Background*[2]

On August 16, 2023, a federal grand jury returned an eight-count Indictment against Defendant. The Indictment charges Defendant with one count of drug conspiracy in violation of 21 U.S.C. § 846 (July 24, 2019-July 16, 2020), four counts of distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1) (on dates from July 2019 through September 2019), two counts of possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (on dates in September 2019 and July 2020), and one count of possession of heroin with intent to distribute in violation of 21 U.S.C. § 841(a)(1) (July 16, 2020). *See* Indictment (Doc. No. 1) at 1-5.[3] As relevant here, the Government alleges that Defendant, while in Oklahoma Department of Corrections ("ODOC") custody serving a state prison sentence, engaged in a conspiracy to distribute drugs using

---

[2] The Court makes the findings of fact detailed below based on the testimony of Special Agent David Wardlaw of the Federal Bureau of Investigation and the exhibits admitted into evidence at the August 6, 2024 *James* hearing.

[3] Defendant is also charged with aiding and abetting as to Counts 2 through 8. *See* Indictment at 2-8.

contraband cellphones, spanning from July 24, 2019, through July 16, 2020. *See* Indictment; Hr'g Tr. (Doc. No. 73) at 26:8-12.

In the summer of 2019, a person was arrested. *See* Hr'g Tr. 39:20-40:4. In a post-arrest interview, the person informed law enforcement that they knew someone in ODOC custody who was selling methamphetamine from inside prison. *See id.* The person identified the seller as the defendant, Chad Back, who was also known by the alias "Overflow." *Id.* at 40:1-7; s*ee also id.* at 80:20-82:2; Gov't's Ex. 3, at 9, 12-13.

Law enforcement then used the person as a confidential source to conduct a total of four controlled buys of methamphetamine from Defendant. Hr'g Tr. 44:3-24. During the first three controlled buys, the confidential source met with Gonzalo Duran to receive methamphetamine; during the last controlled buy, the source met with Catherine Darley. *See id.* at 44:3-45:5.

The first controlled buy, on July 24, 2019, was for a quarter pound of methamphetamine for $900. *Id.* at 45:6-13. Prior to the transaction, the confidential source placed a series of phone calls and text messages to phone numbers associated with Defendant. *Id.* at 45:15-21. The confidential source eventually was instructed to meet Defendant's associate at a particular location. *Id.* at 45:22-46:7. Law enforcement provided the confidential source with an audio/visual recording device and cash and then followed the confidential source to the location of the controlled buy. *See id.* at 45:22-46:10. After the transaction, law enforcement met with the confidential source, retrieved the recording device, and downloaded the recording from that device. *Id.* at 46:11-20.

At the hearing, the Government presented evidence of two video clips from this controlled buy. *See id.* at 47:20-49:25; Gov't's Exs. 1, 2. The clips show a person identified as Gonzalo Duran delivering methamphetamine to the confidential source. *See* Hr'g Tr. 47:20-51:9; Gov't's Exs. 1, 2.

Based on this evidence, the Government argues that the following statements by Mr. Duran, which were recorded during the July 24, 2019 controlled buy, are admissible as coconspirator statements under Federal Rule of Evidence 801(d)(2)(E):

1. Mr. Duran's statements representing that he met Overflow in prison, that he later started working with Overflow, and that he and Overflow have "been doing pretty good together;"

2. Mr. Duran's statements during a brief telephone call with Overflow discussing delivery of "two zips and a half pound;" and

3. Mr. Duran's statements that he and Overflow had just received a resupply of methamphetamine and that it "should have been more."

*See* Hr'g Tr. 47:20-51:9; Gov't's Exs. 1, 2.

## II.    Legal Standards

Federal Rule of Evidence 801(d)(2)(E) prescribes that a statement is not hearsay if the statement is offered against an opposing party and "was made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). "The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it under (E)." *Id.* R. 801(d)(2).

"Before admitting statements into evidence under the coconspirator exception to the hearsay rule, the district court must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the

conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017).  Whether the Rule 801(d)(2)(E) standard is satisfied is a "preliminary question," and "[i]n so deciding, the court is not bound by evidence rules, except those on privilege." *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); Fed. R. Evid. 104(a).

"To prove a conspiracy existed, the district court must find by a preponderance of the evidence that (1) there was an agreement to violate the law, (2) the declarant knew the essential objectives of the conspiracy, (3) the declarant knowingly and voluntarily took part in the conspiracy, and (4) the coconspirators were interdependent." *United States v. Rutland*, 705 F.3d 1238, 1249 (10th Cir. 2013).  "[B]ecause a criminal conspiracy by its very nature is usually shrouded in a further conspiracy of silence, the common plan or purpose must often be, and may legitimately be, proved by circumstantial evidence." *United States v. Pickel*, 863 F.3d 1240, 1252 (10th Cir. 2017) (internal quotation marks omitted).  "A conspirator need not know of the existence or identity of the other members of the conspiracy or the full extent of the conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator." *Id.* (internal quotation marks omitted).

To prove participation, "the evidence need only show that the defendant played a minor role in the conspiracy to make him a co-conspirator." *Id.*  "Regarding interdependence, the fourth conspiracy element, the evidence must show the coconspirators intended to act together for their shared mutual benefit within the scope of the conspiracy charged." *Id.* (alteration and internal quotation marks omitted).

"A statement is made in furtherance of a conspiracy when it is intended to promote the conspiratorial objectives."  *Rutland*, 705 F.3d at 1252 (internal quotation marks omitted).  The Tenth Circuit

> ha[s] found the following sorts of statements to be in furtherance of a conspiracy: (1) statements explaining events of importance to the conspiracy, (2) statements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy; (3) statements identifying a fellow coconspirator; and (4) discussions of future intent that set transactions to the conspiracy in motion or that maintain the flow of information among conspiracy members.  Mere narrative declarations of past events, however, are not in furtherance.

*Id.* (citations and internal quotation marks omitted).

III.     *Discussion*

1.     <u>Whether a Conspiracy Existed and Whether Mr. Duran and the Defendant Were Both Members of that Conspiracy</u>

The Court finds by a preponderance of the evidence that a drug conspiracy existed at the time that Mr. Duran made the three identified statements and that both Mr. Duran and Defendant were members of that conspiracy.

The Government has presented sufficient evidence at this stage to support a finding that, on July 24, 2019, Mr. Duran and Defendant were engaged in a common plan or scheme to sell methamphetamine.  Special Agent Wardlaw testified that on July 24, 2019, the confidential source coordinated with Defendant to order methamphetamine, which Mr. Duran later delivered to the confidential source in exchange for $900 cash.  *See* Hr'g Tr. 45:6-46:7.  Further, during this controlled buy, Mr. Duran referred to his working with Overflow and even took a call from Overflow to discuss another drug deal.  *See id.* at

6

47:20-51:9; Gov't's Exs. 1, 2.  The confidential source went on to participate in two more controlled buys with Defendant and Mr. Duran, contacting Defendant to order methamphetamine and then meeting Mr. Duran to receive and pay for the drugs.  Hr'g Tr. 44: 3-45:5.

Defendant does not seriously dispute the existence of the conspiracy or Mr. Duran's participation in the conspiracy.  *See id*. at 88:2-5.  Rather, Defendant argues that the Government has failed to present sufficient evidence to support that the person identified as Overflow, who facilitated the controlled buys between the confidential source and Mr. Duran, was actually the defendant, Chad Back.  *See id*. at 88:5-11.

The Court finds that the Government has offered sufficient evidence at this stage to support that Chad Back and Overflow were the same person.  Agent Wardlaw testified that the confidential source and other associates of Defendant's confirmed that Chad Back used the alias Overflow and facilitated these drug deals.  *See id.* at 40:1-7, 80:20-82:2.  Additionally, law enforcement later recovered drug ledgers and notes at the confidential source's residence indicating that the person with whom the source was communicating was "Chad Back," "Chad Timothy Back," and "Overflow."  *See* Gov't's Ex. 3, at 9, 12-13.  For these reasons, the Court finds that the Government has proven by a preponderance of the evidence that a conspiracy existed and that Mr. Duran and Defendant Chad Back were both members of the conspiracy.  *See Alcorta*, 853 F.3d at 1137; *Rutland*, 705 F.3d at 1249.

2.    <u>Whether the Identified Statements Were Made in Furtherance of the Conspiracy</u>

Having concluded that a conspiracy existed and that the declarant and Defendant were both members of the conspiracy, the Court must now determine whether the identified statements were made in the course of and in furtherance of the conspiracy. *See Alcorta*, 853 F.3d at 1137. As previously explained, the Government seeks to introduce the following statements as nonhearsay pursuant to Federal Rule of Evidence 801(d)(2)(E):

1. Mr. Duran's statement representing that he met Defendant in prison, that he later started working with Defendant, and that he and Defendant have "been doing pretty good together."

2. Mr. Duran's statement during a brief telephone call with Defendant discussing delivery of "two zips and a half pound."

   -and-

3. Mr. Duran's statement that he and Defendant had just received a resupply of methamphetamine and that it "should have been more."

At the hearing, Defendant did not dispute that the second statement would qualify as a statement made in the course of and in furtherance of the conspiracy. *See* Hr'g Tr. 35:16-23. Accordingly, the Court turns its attention to the first and third statements.

As to the first statement, the Government argues that Mr. Duran's recounting of how he met Defendant and their work together served the important function of establishing Mr. Duran as the legitimate agent of Defendant and also served to entice the confidential source to continue to do business with Defendant and Mr. Duran. *See* Gov't's Suppl. at 4. In response, Defendant argues that this statement was simply idle chatter that did not act to further the conspiracy and so should not be admitted under the coconspirator hearsay exception. *See* Hr'g Tr. 89:4-90:6.

8

Mere narrative declarations regarding past events do not qualify as statements made in furtherance of the conspiracy.  *See Rutland*, 705 F.3d at 1252.  Statements are admissible under the coconspirator exception, however, "if they are intended to promote the conspiratorial objectives." *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993) (internal quotation marks omitted).  Further, "[s]tatements between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them, or which inform each other of the current status of the conspiracy, further the ends of the conspiracy and are admissible so long as the other requirements of Rule 801(d)(2)(E) are met." *United States v. Gomez*, 810 F.2d 947, 953 (10th Cir. 1987).

Here, the Court finds by a preponderance of the evidence that Mr. Duran's statement representing that he met Defendant in prison, that he later started working with Defendant, and that he and Defendant have "been doing pretty good together" was a statement made in the course of and in furtherance of the conspiracy.  Specifically, the Court finds that this statement served to establish Mr. Duran as Defendant's legitimate agent and to encourage the source to continue to do business with Defendant and Mr. Duran.  *See United States v. Roldan-Zapata*, 916 F.2d 795, 803 (2d Cir. 1990) (finding that a statement furthered the conspiracy's purposes by informing a drug buyer of the identity and role of the defendant and reassuring the buyer to proceed with the transaction in the presence of someone with whom the buyer was not familiar).

At the hearing, Defendant also argued that the third statement by Mr. Duran to the confidential source representing that he and Defendant had just received a resupply of methamphetamine, and that it "should have been more," did not act to further the

conspiracy. *See* Hr'g Tr. 89:14-90:9. The Court finds that this statement furthered the conspiracy by informing the confidential source of the current state of the conspiracy, specifically the amount of methamphetamine that Defendant and Mr. Durran then had available for purchase. *See Gomez*, 810 F.2d at 953-54 (holding that statements regarding the defendant's cocaine source were made in furtherance of the conspiracy as those statement where "useful to allay the coconspirators' possible suspicions regarding the continued availability of cocaine").[4]

Accordingly, the Court determines that all three statements were made in the course of and in furtherance of the conspiracy. *See Alcorta*, 853 F.3d at 1137.

CONCLUSION

The Court FINDS AS FOLLOWS:

The Government may offer into evidence at trial the three identified statements made by Gonzalo Duran during the July 24, 2019 controlled buy recorded in the Government's Exhibits 1 and 2. Defendant's objections regarding the admissibility of these statements on the basis of hearsay are OVERRULED.

---

[4] The Court additionally notes that the fact that Mr. Duran made the identified statements to the Government's confidential source has no impact on the statement's admissibility under 801(d)(2)(E). *See United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995) ("[I]n deciding whether statements are admissible under Rule 801(d)(2)(E), the appropriate focus is on whether the statements were 'made by' a member of the conspiracy, and not on whether the statements were 'made to' a member of the conspiracy.").

IT IS SO ORDERED this 18th day of December, 2024.

CHARLES B. GOODWIN
United States District Judge